UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES A. CONLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:12-cv-604-WTL-TAB |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Charles A. Conley requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying Conley's application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court now rules as follows.

### I.    PROCEDURAL HISTORY

Conley filed an application for DIB and SSI on March 23, 2009, alleging disability beginning February 17, 2009. Conley's application was initially denied on June 8, 2009, and again upon reconsideration on September 10, 2009. Thereafter, Conley requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on December 14, 2010, before ALJ Monica LaPolt in Indianapolis, Indiana. During the hearing, Gail K. Corn testified as a vocational expert. On March 8, 2011, the ALJ issued a decision denying Conley's application

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration after this case was filed. She is therefore substituted as the Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on March 26, 2012. This action for judicial review ensued.

## II.     EVIDENCE OF RECORD

The relevant medical evidence of record follows.

On March 30, 2009, Conley visited a Wishard clinic where he was treated by Dr. Cynthia Misumi. Dr. Misumi diagnosed Conley with lower back pain and neck pain. A month later, on April 29, 2009, Conley visited Dr. Misumi again complaining of shoulder pain and back pain that he rated at an eight on a scale of zero to ten. He was prescribed tramadol and naproxen.

On May 4, 2009, Conley underwent a Social Security Disability Examination with Dr. Doug Poplin. Dr. Poplin concluded that Conley suffered from chronic low back pain, a right trapezius muscle spasm, a tender plantar wart on his left foot, hypertension, and poor near visual acuity.

On May 19, 2009, Dr. Carrie Dixon performed a psychological evaluation for the Disability Determination Bureau. Her report states that Conley described his "leisure interests" as sports and his "fun-type activities" as watching TV and playing basketball. Tr. at 281. With regard to Conley's activities of daily living, Dr. Dixon's report noted:

> Charles independently ambulates. He independently performs daily living activities such as bathing, dressing, and grooming. However, with bathing, Charles stated, "She got to help me stand up." Charles was referring to his mother. He bathes once a week. He occasionally requires assistance in dressing and stated, "Somebody has to put my pants half way up . . . it's hard for me to bend 'cause my back and my shoulder messed up and I have problems breathing too, my asthma gone bad." In reference to washing his hair, Charles stated, "I need my hair washed 'cause it's hard for me to bend over." He does not cook but states that he is capable of performing this activity. He stopped housecleaning approximately three months [ago] because "I [can't] stand on my feet long 'cause my back is messed up, my shoulder messed up." He stopped doing laundry three years ago "because I'm hurt. I'm injured." He stopped doing grocery shopping approximately six months ago because "no income."

*Id.* at 282. Dr. Dixon also noted that Conley complained he was depressed due to stress because he could not find a job. Dr. Dixon opined that Conley suffered from depressive disorder not otherwise specified and assigned him a Global Assessment of Functioning score of 65. Dr. Dixon did note that Conley "appeared not to be doing his best on the memory items" and the math items. *Id.* at 283.

On October 22, 2009, Conley was treated in the Wishard Hospital emergency room for a grease burn to his left foot. The burn was debrided and Conley was referred to therapy. On October 26, 2009, during a follow-up visit, doctors recommended surgery to repair the non-healing area of the burn. Conley received a skin graft measuring approximately 100 square centimeters on October 29, 2009. Thereafter, Conley was fitted with an Unna boot and instructed to wear it full-time. As of December 11, 2009, Conley had no complaints and, according to the records, reported that he was "happy with his progress" and felt "that his scar was doing better." *Id.* at 330. Conley was fitted with a compression sock and ultimately discharged from treatment on December 23, 2009.

Conley followed up with Dr. Misumi in December, 2009, complaining of right shoulder pain. He reported that the pain was at a seven on a scale of zero to ten. A shoulder x-ray revealed osteophytes on the undersurface of his acromioclavicular joint. He was seen again on March 23, 2010, for shoulder pain and lower back pain. That day, his pain was rated as a nine on a scale of zero to ten. Dr. Misumi opined that Conley suffered from mild osteoarthritis in his right shoulder. He received prescriptions for ibuprofen and tramadol.

On April 10, 2010, an x-ray of Conley's back indicated normal results.

On July 7, 2010, Conley received a new pressure garment for his foot. An x-ray of his foot revealed hammertoes, but an "otherwise, negative postoperative left foot." *Id.* at. 338. A doctor did opine, however, that his foot would benefit from additional compression therapy.

In November, 2010, Conley complained of increased shoulder pain. He reported the pain was at an eight on a zero-to-ten scale. He received prescriptions for tramadol and naproxen. Several months later, on January 11, 2011, Conley received another x-ray of his right shoulder. The x-ray revealed "negative" results. *Id.* at 369.

### III.  APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of

---

[2]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while "[s]he is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1177.

### IV.   THE ALJ'S DECISION

At step one, the ALJ found that Conley had not engaged in substantial gainful activity since his alleged onset date of February 17, 2009. At step two, the ALJ concluded that Conley suffered from the following severe impairment: the residual effects of a burn injury to his left foot. The ALJ found Conley's left shoulder pain, mild osteoarthritis in his right shoulder, lower back pain, hypertension, depression, and anxiety to be non-severe. At step three, the ALJ

determined that Conley's severe impairment did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Conley had the residual functional capacity ("RFC") to perform light work, but that he

> may lift no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds; and stand and/or walk, off and on, for a total of approximately six hours of an eight hour workday, with intermittent sitting except: he may never operate foot controls with his left lower extremity; and may never push or pull with his left lower extremity. The claimant may not stand stationary in one place for more than one hour at a time. He may never climb ladders, ropes, or scaffolds. Finally, the claimant may no more than occasionally balance, or climb ramps and stairs.

Tr. at 15. Given this RFC, and taking into account Conley's age, education, and work experience, the ALJ determined at step five that Conley could perform jobs existing in significant numbers in the national economy, those being a cleaner, an inspector, and a fast food worker. Accordingly, the ALJ concluded that Conley was not disabled as defined by the Act from February 17, 2009, through the date of her decision.

## V.    DISCUSSION

Conley advances several objections to the ALJ's decision; each is addressed below.

### A. Lack of Substantial Evidence to Support ALJ's Decision

First, Conley argues that "substantial evidence fails to support the ALJ's . . . decision that . . . Conley was not disabled due to chronic pain." Conley's Br. at 8, Dkt. No. 14. Conley maintains that the ALJ ignored, selectively considered, rejected, or mischaracterized various treatment notes indicating that Conley was disabled due to pain in his back and shoulders. Conley's argument, however, is without merit.

An ALJ need not discuss every piece of evidence in her disability decision. *See Diaz v. Chater,* 55 F.3d 300, 307–08 (7th Cir.1995). Rather, the ALJ must simply "provide some glimpse into [her] reasoning ... [and] build an accurate and logical bridge from the evidence to

6

[her] conclusion." *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir.2004). In this case, the ALJ did just that.

With regard to Conley's shoulder pain, the ALJ noted Dr. Misumi's finding of mild osteoarthritis and the shoulder x-ray taken on January 11, 2011, indicating normal results. The ALJ also noted that despite Conley's complaints of lower back pain, an x-ray in April, 2010, was normal. Additionally, the ALJ stated that no other testing or treatment of Conley's lower back was requested or sought. As a result of the foregoing, the ALJ determined that Conley's back pain and shoulder pain were not severe impairments. There are no medical records that undermine these findings, and the specific records cited by Conley, which, for the most part, discuss Conley's subjective complaints of pain and resulting limitations, do not illustrate that he was more limited than the ALJ found.[3] *See* S.S.R. 85-28 ("At the second step of sequential evaluation, . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.").

In sum, the ALJ properly articulated her reasoning for finding Conley's back pain and shoulder pain to be non-severe impairments, and her determination is substantially supported by the medical evidence of record.

### B.  Credibility Determination

Next, Conley argues that the ALJ's credibility determination was "patently erroneous" because it was "contrary [to] the evidence and contrary to Social Security Ruling 96-7p." Conley's Br. at 13, Dkt. No. 14. The Court does not agree.

---

[3]For example, Conley states that "[T]he ALJ ignored the 11-5-10 treatment by Dr. Misumi, MD for right shoulder pain." Conley's Br. at 11; Dkt. No. 14.  That treatment note reports that Conley's pain had worsened over the last two weeks, his pain was an eight on a scale of zero to ten, the pain was aggravated by lying on that shoulder, and his prescriptions for tramadol and naproxen were refilled. This report does not contain evidence that is contrary to the ALJ's decision such that the ALJ's failure to specifically discuss the record was improper.

In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify her finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). District courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

The ALJ in this case conducted a very thorough and methodical credibility evaluation. After noting and evaluating virtually all of the factors identified above, the ALJ determined that Conley's physical and mental ailments were not as limiting as he alleged. *See* Tr. at 15-20. In doing so, the ALJ identified several specific reasons for her finding. For example, the ALJ noted several inconsistencies between the record and Conley's subjective complaints: Conley complained of severe back and shoulder pain, yet he played basketball; Conley also reported that he did not cook, but he suffered a severe grease burn while cooking in October 2009. The ALJ also noted that Conley's medical evidence and his treatment plan did not support Conley's complaints of chronic severe pain. Conley also had not attended several scheduled appointments with his medical providers.

Because the ALJ considered the required factors and supported her determination with specific reasons, her credibility finding was based on substantial evidence and was not patently wrong.[4]

### C. ALJ's Determination at Step Five

Finally, Conley argues that the ALJ erred when she determined that Conley was not disabled because he could perform some jobs. The source of this error, Conley argues, was the ALJ's failure to include Conley's subjective complaints in her hypothetical question to the vocational expert, and the ALJ's failure to consider the vocational expert's testimony that "when all of the claimant's impairments were considered, there would be no jobs he could sustain." Conley's Br. at 15, Dkt. No. 14; Tr. at 51-52; Dkt. No. 12-2.

In evaluating a claim, the ALJ must give full consideration to all of a claimant's documented impairments. *Indoanto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Moreover, as Conley notes, "the ALJ must consider a claimant's subjective complaint of pain if supported by medical signs and findings." *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citations omitted). Here, however, the ALJ performed a proper credibility determination and concluded that Conley's complaints of disabling pain and alleged limitations were not entirely credible and also not supported by the medical evidence. Thus, the ALJ was not required to account for, include, or consider such information with regard to the hypothetical given to the vocational expert. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (citations omitted) ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record."). For the same reasons, the ALJ was

---

[4] However, the Court shares in the sentiments expressed in recent Seventh Circuit opinions regarding the meaninglessness of certain Social Security "templates," such as the one used here. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012).

entitled to dismiss the vocational expert's testimony that, when considering Conley's subjective complaints, there would be no available jobs.

Here, the ALJ's determination at step five accounted for Conley's RFC, age, education, and work experience, as well as the vocational expert's testimony. Accordingly, the ALJ's step five analysis is supported by substantial evidence.

## VI.    CONCLUSION

In this case, the ALJ satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED:  07/15/2013

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.